Deadeeick, J.,
delivered the opinion of the Court.
On the 21st of February, 1867, Win. H. Long and W. A. Barrier entered into a written contract, the material stipulations of which are as follows:
1. “Wm. H. Long, party of the first part, agrees to furnish W. A. Barrier, party of the second part, land, tools, and teams to the amount of one mule to every two plough hands, sufficient to cultivate a crop on the plantation of the party of the first part, feed the teams, furnish quarters for the hands, and direct *268 tbe manner in which repairs [shall be made] and the crop shall be cultivated.
2. “That W. A. Barrier, party of the second part, agrees to furnish the party of the first part forty hands, furnish them everything needful for their comfort, food, clothing, etc., and do all kind of work necessary to be done to put the plantation in order, and cultivate a crop.
“All expenses incurred for blacksmithing, buying cotton seed, or other seed, and preparing the crop for market, shall be borne equally by each.
“All moneys loaned by Long to Barrier shall be repaid him out of the first sales of cotton in the fall. The work shall be done under the control and direction of Long, and at the end of the year the crop shall be equally divided between the parties, Long and Barrier.”
After the crops were pitched, Long died — about 29th of May, 1867. Plaintiff in error lived on the place with Long at the time of his death, was his son-in-law, and was appointed and qualified as executor of Long, and continued to live on the place, and after Long’s death, in the language of a witness, took Long’s place, and he and Barrier carried on the work.
During the cropping season, an account was made with Abner Taylor for supplies, partly before but principally subsequent to the death of Long.
This suit was brought on this account by Abner Taylor in the Circuit Court of Madison county, against Barrier and Mann; while it was pending Taylor died, and the suit was revived in the name of Laura Taylor, his executrix.
*269 Judgment by default was taken against Barrier, and verdict and judgment were rendered against Mann, from which, he appealed in error to this Court.
It is insisted by defendant in error that the judgment below should be reversed for error in the charge.
The Court charged the jury that “the contract between Long and Barrier constituted a partnership between them; that the death of Long dissolved the partnership, but if Mann carried on the business with Barrier as executor or for himself, he would be jointly liable to third persons for supplies bought and used by them.”
We are of opinion that the Court erred in the construction of the contract, and that for this error the judgment must be reversed.
This charge, in connection with the testimony of one of the witnesses, that Mann and Barrier carried on the business just as was done during the life time of Long, must have produced the impression on the minds of the jury that Mann and Barrier were partners, and liable to plaintiff for supplies furnished as such partners.
The contract between Long and Barrier is one of a character now frequently made in this country, and partakes of the nature of a contrat between landlord and tenant, whereby the tenant agrees to cultivate the land and pay a share of the crops to the landlord, rather than a contract of partnership.
The contract of partnership is an agreement between two or more persons to place their money, effects, labor and skill, or some or all of them, in lawful *270 commerce or business, and to divide the profit and bear the loss in certain proportions. The two leading principles of the contract, are a common interest in the stock of the company, and a personal responsibility for the partnership engagements: 3 Kent, 23-4.
An agreement on the part of one who is to do the labor, to take charge of and manage the land on shares, is not regarded as a lease, but more in the nature of payment for services rendered, by a part of the crops raised: Wash, on Keal Prop., 365.
If the agreement be for a division of the specific crops, the owner of the land and the occupant are regarded as tenants in common of these crops. Farming on shares makes the owner of the land and the farmer tenants in common of the crops. Thus, a contract by which A should have possession of B;s farm, and put in crops upon shares, makes them tenants in common of the crops, and A may sell or mortgage his share of the crops. Where the owner of the farm was to furnish teams and fodder for them, seed, and farming implements, and the other party to do the work, cultivate and secure the crops, and these were to be divided between them in certain proportions, it was held to constitute a tenancy in common of the crops: lb., 365.
For the error in the charge of the Court, let the judgment be reversed and the cause remanded for a new trial.